Nathaniel AUSTIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 42619.

Court of Criminal Appeals of Texas.

March 4, 1970.

Wallace Craig, Fort Worth (Court Appointed), for appellant.

Frank Coffey, Dist. Atty., Roland H. Hill, Jr., and Truman Power, Asst. Dist. Attys., Fort Worth and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

BELCHER, Judge.

The conviction is for robbery by assault; the punishment, seven years.

In his first two grounds of error the appellant contends that the trial court erred in admitting the appellant's prior conviction to impeach the appellant because the conviction was not a final conviction and because the conviction was too remote in point of time.

At the guilt stage of the trial on May 28, 1969, the record reflects the following testimony during the cross-examination of the appellant:

"Q   Now aren't you the same Nathaniel Austin who was convicted of burglary—

"Mr. Craig:   Objection, Your Honor. Counsel knows that is perfectly improper.   No proper predicate has been laid and it is too remote in point of time.   May we approach the Bench?

(Discussion at the Bench.)

"BY MR. HILL:

"Q   Are you the same Nathaniel Austin that was convicted of burglary back in '58?

"A    Yes, sir.

"Mr. Hill: I believe that is all.

"Mr. Craig: No questions."

■      There is nothing in the record to apprise the court that the prior conviction with which the state sought to impeach the appellant was not a final conviction. In addition, the record does not reveal that the court ever ruled on the appellant's objections. An accused must obtain a ruling by the court on an objection to preserve error. The appellant's first two grounds of error are overruled. 5 Tex.Jur. 2d 47; Holloway v. State, 88 Tex.Cr.R. 126, 224 S.W. 1102; Yaffar v. State, 171 Tex.Cr.R. 341, 349 S.W.2d 730; Cook v. State, Tex.Cr.App., 388 S.W.2d 707; Rodriguez v. State, Tex.Cr.App., 398 S.W.2d 124; Piraino v. State, Tex.Cr.App., 415 S.W.2d 416; Lawhon v. State, Tex.Cr.App., 429 S.W.2d 147; Munoz v. State, Tex.Cr.App., 435 S.W.2d 500; Bell v. State, Tex.Cr.App., 442 S.W.2d 716.

The third ground of error is that the trial court denied appellant's motion requesting a transcript of all the testimony of the previous trial in this case which resulted in a hung jury for the reason that he should have been afforded an opportunity to review and study such testimony in order to make a proper defense in this case.

Counsel for the indigent appellant in this case also represented him at the previous trial, and the same court reporter took the testimony in both trials which were presided over by the same judge.

The motion did not point out any previous testimony which appellant had reasonable grounds to believe would be materially different on the second trial. No inquiry was made of the witness Spees, the assaulted party, as to what he had testified on the previous trial. No contradiction, inconsistency, or discrepancy was sought to be shown in the testimony of any state's witness with their testimony on the previous trial. During or at the close of

Spees's testimony, no request was made for the court reporter to read any or all of his testimony on the former trial from the untranscribed court reporter's notes of the former trial.

■      The appellant was not entitled to demand a transcript merely to enable him to comb the transcript of the evidence at the previous trial in the hope of discovering some flaw. Wade v. Wilson, 396 U.S. 282, 90 S.Ct. 501, 24 L.Ed.2d 470.

■      There is no statutory or decisional law requiring a court reporter to transcribe all the testimony given at a trial where the court declares a mistrial. The appellant would not, in advance of the second trial, be entitled to be furnished a transcription of all the testimony given at the previous trial without a showing of some particularized need. Art. 2324, R.C. S.; 20 Tex.Jur.2d 157, Sec. 18; 1 Branch 2d 116, Sec. 103; 4 Branch 2d Sec. 2267.1; Perbetsky v. State, Tex.Cr.App., 429 S.W. 2d 471; Hanes v. State, 170 Tex.Cr.R. 394, 341 S.W.2d 428; Bryant v. State, Tex.Cr. App., 423 S.W.2d 320; Acuff v. State, Tex.Cr.App., 433 S.W.2d 902. In this state of the record, there was no error is refusing the motion.

■      The appellant's fourth ground is that, "The Trial Court erred in rebuking defense counsel without any objection from the prosecutor when defense counsel was cross-examining the complaining witness, since this constituted a comment on the weight of the evidence and tended to inform the jury that the Court thought Appellant guilty."

The record reveals that the judge halted the trial while defense counsel was cross-examining the assaulted party, sent the jury to their room, and in the jury's absence told counsel that he had put up with a "lot" during the three days of the previous trial and he was going to have a little more decorum during this trial; that he wanted to be courteous, but he also wanted it returned.

To this statement there was no reply, no explanation and no objection.

The jury was returned and the trial resumed. From the record as shown, no error is presented.

In his fifth ground of error the appellant challenges the sufficiency of the evidence.

The testimony of the complaining witness, G. D. Spees, reflects that around 1 p. m., on November 18, 1968 at the corner of Fifteenth and Calhoun Streets in Fort Worth, Tarrant County, Texas, he was stopped by two men, one of whom he identified in the courtroom as being the appellant. The appellant stopped Spees by holding onto the lapels of his jacket and asked him for thirty-five cents, and when Spees said that he didn't have thirty-five cents, the other man moved behind Spees and placed a knife with the blade open across the back of Spees's neck. The appellant then said, "Don't kill him. He is going to give us thirty-five cents." The other man said, "Do you reckon a white man would bleed if you cut his throat." Spees again told the men he did not have thirty-five cents, and the appellant said, "Do you mean to tell me that your life isn't worth thirty-five cents?" Next, the men started to go through Spees's pockets. Spees took out his billfold and showed the men there was no money in it. The appellant felt Spees's keys and asked what they were. When Spees pulled the keys from his pocket, a dime and a penny came along with them. The appellant took the eleven cents and pushed Spees in the chest and said, "White Boy, you better do better next time." Before the appellant turned Spees loose he asked, "Would you know me, boy?" Spees told him that he would. Spees then went two doors down the street and called the police. After ten or fifteen minutes, a police officer arrived, and Spees got into the car with him explaining what had happened. Spees saw the men who had stopped him walking down the street, and the police officer stepped out and arrested them.

Spees further testified that during the time the men stopped him, he was in fear for his life, that the money the appellant took from him was his corporeal property, and that it was taken without his consent.

Patrolman W. L. Leader of the Fort Worth Police Department testified that at approximately 1:10 p. m., in response to a call, he went to the area of Fifteenth and Calhoun Streets where he saw Spees standing on the sidewalk. He stopped his police car across the street and had a conversation with Spees in the police car where he obtained information for the police report. Spees glanced over his shoulder and said, "That is them there." Leader then called for another car, placed the two men under arrest, searched them, and found on the appellant a bone-handled knife with approximately a three-inch blade.

In the courtroom, Leader identified the appellant as one of the men that Spees pointed out to him and that he had arrested.

Testifying in his own behalf, the appellant stated that on November 18, 1968 he and John Crosby were at the intersection of Fifteenth and Calhoun around 1 p. m., and they had seventy-five cents and needed another nickel to buy a bottle of wine. When Spees walked past them, they asked him for a nickel to buy a bottle of wine, and Spees gave them six cents which they gave to a man named Sam Harris, who bought them a bottle of wine. Harris, Crosby, and the appellant then went to Rosie's Cafe where they drank the wine in about twenty or twenty-five minutes at which time Sam Harris went home, and Crosby and the appellant started to go to Frank's Place at the corner of Sixteenth and Jones. On the way they were stopped by a police officer who told them they had been pointed out for a robbery and then arrested them.

The appellant further testified that he never made any threatening gestures toward Spees and that he didn't ever say

anything to Spees about killing or hurting him.

 The jury resolved the issues of fact against the appellant. The evidence is sufficient to support the conviction. The fifth ground of error is overruled.

The judgment is affirmed.